FILED

2009 Feb-17  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RICHARD COOK,

     Plaintiff,

vs.                                            CASE NO. CV-07-J-1830-S

TRAMMELL CROW COMPANY,

     Defendant.

### MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment, memorandum in support of said motion, and evidence (doc. 21), to which the plaintiff filed evidentiary material and a response in opposition (doc. 24 and 25). The defendant thereafter filed a reply (doc. 29).

### I. Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against him on the basis of his age, as evidenced by the defendant's failure to hire him when defendant took over the maintenance contract for the facility where the plaintiff was employed providing maintenance services. Complaint, ¶ 9. The plaintiff alleges that the selection of a younger male instead of him for the position in question violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Complaint, ¶ 14.

## II.  Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff was employed by Jones Lang LaSalle, a company that provided facilities maintenance services to the data center for Wachovia Bank.[1]  Plaintiff depo. at 16.   His job title was "systems engineer," which included responding to maintenance calls, replacing florescent bulbs and ballasts, replacing flush valves in toilets, tightening bolts, checking air handlers and generators, performing weekly and monthly testing on building systems to ensure they were in proper working order, replacing belts and filters in the air handlers, and setting building systems for increased efficiency.  Plaintiff depo. at 16-24.  He also performed safety compliance checks on building emergency systems and had to respond to after hour calls as necessary.  Plaintiff depo. at 24-27.  The plaintiff's supervisor was Neal Lucas. Plaintiff depo. at 34.

Actual repairs of the buildings' HVAC system were performed by outside contractors.  Plaintiff depo. at 35.  Major plumbing problems and electrical issues requiring a bucket truck were also handled by an outside company.  Plaintiff depo.

---

[1]The plaintiff was hired to the position in question in April 2000 when Wachovia's predecessor, SouthTrust, was in the relevant location.  Plaintiff depo. at 30-31.  At some point, Jones Lang LaSalle took over maintenance responsibilities and the plaintiff became an employee of Jones Lang LaSalle.  Plaintiff depo. at 31-32.

at 19-20, 28.   The plaintiff was never disciplined and had good performance evaluations during his tenure with Jones Lang LaSalle.  Plaintiff depo. at 36-37.

During the summer of 2006 the Jones Lang LaSalle employees learned that defendant had been awarded the maintenance contract on the buildings and that they would have to apply for positions with the defendant.  Plaintiff depo. at 40-41; Donna Burnell affidavit, ¶ 3.[2]  When the plaintiff interviewed,  he applied for the position that described his current job duties.  Plaintiff depo. at 32-33.  John Byrd, Brad Andrews and "Edwin" had the same job description as the plaintiff at the time of the interviews.[3]  Plaintiff depo. at 33.  At the time of the interviews, the whole maintenance crew was told that the defendant did not expect any changes and that the work would be basically the same.  Plaintiff depo. at 43.  The plaintiff also heard everything was going to stay the same from a district manager with Jones Lang LaSalle who was also seeking employment with defendant. Plaintiff depo. at 45.  The plaintiff was never told by anyone representing the defendant that all the maintenance employees would be retained.  Plaintiff depo. at 46.

---

[2]Donna Burnell was the Transition Leader who oversaw defendant's assumption of services for the Wachovia location.  Burnell affidavit, ¶¶ 1, 4.

[3]Edwin Adams was a co-employee of plaintiff's and was hired by defendant.  Richard Robbins affidavit, ¶ 9. (Richard Robbins was Human Resources Director for defendant at the time in question.  Robbins affidavit, ¶ 2.)

During his interview, the plaintiff and the interviewers discussed the position of maintenance engineer or maintenance technician.  Plaintiff depo. at 53.  The interviewers asked the plaintiff about his plans for the future, to which he responded that "I'm going to turn 57 soon and you know, I hope I have ten more years to work for you."  Plaintiff depo. at 53-54.  The plaintiff assumed the interview was just a "pleasantry."  Plaintiff depo. at 54-55.  Harry Douglas and Patty Zubal, employees of defendant, interviewed the plaintiff.[4]  Douglas depo. at 13-14.  Douglas did not know the specific positions available at the time of the interviews, and he did not have copies of resumes or applications with him.  Douglas depo. at 16.   After the interviews, Douglas asked a Wachovia representative, Brent Falkenhagen, who had previously worked at the facility in question about the interviewees, and he made recommendations about each individual applicant.  Douglas depo. at 20-21.

The plaintiff learned he would not be hired by defendant by letter dated September 1, 2006.  Plaintiff depo. at 55; plaintiff exhibit 14.  Although the letter stated he could apply for other positions with defendant, no one knew how to access defendant's website for job postings, and the plaintiff heard that defendant had no other jobs in the area.  Plaintiff depo. at 56-57. Everyone except plaintiff and John Byrd, also over 50 years old, received job offers from defendant.  Plaintiff depo. at

---

[4]Harry Douglas was Chief Operating Engineer for defendant.  *See* exhibit 1 to Burnell affidavit. Patty Zubal was Human Resources manager at the time.  Douglas depo. at 13.

58-59.  The plaintiff's last day of employment was October 31, 2006.  Plaintiff depo. at 59.

The plaintiff asserts that every one who did receive job offers from defendant was substantially younger than he was.  Plaintiff depo. at 59-60.  The plaintiff believes he was not offered a job based on his age because his qualifications were the same as Brad Andrews, who he believes to be in his late 20s and who was hired by defendant.  Plaintiff depo. at 60-62.  The plaintiff heard from John Byrd that he spoke with someone from defendant and was told that plaintiff and Byrd were not hired because they did not meet defendant's qualifications.[5]  Plaintiff depo. at 63-64.  However, the plaintiff himself never asked anyone at Trammell Crow why he was not hired.  Plaintiff depo. at 64-65.  He does not know who made the specific decision not to hire him.  Plaintiff depo. at 81.

The plaintiff later heard that the defendant had hired "Jason" to work at the Wachovia location as well, specifically for the building the plaintiff used to oversee.  Plaintiff depo. at 66-67.  The plaintiff believes Jason is in his 20s.  Plaintiff depo. at 68.  The plaintiff does not know if defendant retained the exact same jobs as under

---

[5]John Byrd joined this lawsuit as a plaintiff on October 11, 2007 (doc. 3).  By Order dated January 29, 2008, the judge to whom this case was previously assigned severed the claims of John Byrd, finding that the claims arose from separate and distinct occurrences (doc. 12).  The Order further instructed Mr. Byrd to file his own case, which he did.  That case was reassigned to another District Judge.

Jones Lang LaSalle or if any other responsibilities were added.  Plaintiff depo. at 78-79.  The plaintiff agrees that defendant did hire some people who were over the age of 40 but did not know if anyone over the age of 50 was hired.

Defendant intended to have one less employee at the Wachovia site than Jones Lang LaSalle did.  Burnell affidavit, ¶ 6.  None of the Jones Lang LaSalle employees was told he or she would be hired.  Burnell affidavit, ¶ 8.  Harry Douglas stated that the plaintiff had limited experience, was not very motivated, had a questionable attitude, and was not recommended by Mitch Dickinson.[6]  *See* exhibit 1 to Burnell affidavit. Douglas also stated that  "John Byrd and Richard Cook are definately (sic) not recommended.  Brent suggested that if we kept either of them, Sharon would really wonder about us."[7]  Exhibit 2 to Burnell affidavit.  Based on feedback from the client, the interview notes, each applicant's job skills, and discussions with defendant's Human Resources department, Burnell made the decision not to hire the plaintiff or John Byrd.  Burnell affidavit, ¶¶ 13-14.  Burnell concluded that plaintiff

_____

[6]Mitch Dickinson is a project specialist for Wachovia and a manager of Douglas'. Douglas depo. at 28.  According to Douglas, Dickinson said that he had seen both plaintiff and Mr. Byrd sleeping on the job, and that they were lazy and incompetent.  Douglas depo. at 29. Douglas did not look at Jones Lang LaSalle performance evaluations before making his recommendations to see if plaintiff's supervisor would agree with these sentiments.  Douglas depo. at 29-30.  Douglas also does not know who made the decision not to hire plaintiff or Mr. Byrd.  Douglas depo. at 49

[7]"Brent" refers to Brent Falkenhagen, who related to Douglas that he did not recommend plaintiff or John Byrd.  Douglas depo. at 22-23.

had low maintenance and engineering skills and did not have the skills needed to fill any of the positions available with the defendant.  Burnell affidavit, ¶ 14.

### III.  Standards for Evaluating a Summary Judgment Motion

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc*., 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).  However, all "doubts" need not be so resolved.  *Barnes v. Southwest Forest Industries, Inc.,*  814 F.2d 607, 609 (11th Cir.1987).   Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## IV. Discussion

The ADEA makes it unlawful for an employer to fail or refuse to hire or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). Liability depends on whether the plaintiff's age actually motivated the employer's decision. His age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted). To evaluate ADEA claims based on circumstantial evidence, this court must use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves*, 530 U.S. at 141, 120 S.Ct. at 2105.

In *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428 (11th Cir.1998), the Court specifically addressed the standard to apply when a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA. The Court stated that a burden shifting scheme is employed, as follows: "The plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the

9

plaintiff must establish that the employer's articulated legitimate reason was a pretext to mask unlawful discrimination." *Turlington*, 135 F.3d at 1432, citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995).

To establish his prima facie case under the ADEA for age discrimination, plaintiff must show (1) he was a member of the protected group (age), (2) he was subjected to an adverse employment action, (3) he was qualified for the job and (4) he was replaced or otherwise lost a position to a younger individual. *Turlington*, 135 F.3d at 1432; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997). *See also O'Conner v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).   Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d at 1527.

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).   "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by

the defendant were a pretext for discrimination." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106  (1992).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The defendant asserts that of the six individuals hired for the original positions, five were over age 40.  *See* Richard Robbins affidavit, ¶ 18.  The plaintiff testified that he believed his qualifications were the same as Brad Andrews, the one hiree who was under the age of 40 at the time in question.  *See* plaintiff depo. at 60-62; Robbins affidavit, ¶ 18. The defendant asserts the plaintiff cannot make out a prima facie case because he cannot show that he was qualified for the position of maintenance technician.  Defendant's memorandum, at 8.  However, as the plaintiff asserts his

qualifications were the same as Andrews', and Andrews was hired, the court is of the opinion that, in the light most favorable to the plaintiff, the plaintiff does establish a prima facie case of age discrimination, based on the above stated analysis this court must apply.   Thus, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for the challenged action (the failure to promote plaintiff). *Combs*, 106 F.3d at 1528; citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

The defendant puts forth as reasons for its decision that not only did plaintiff not have the skills it sought, but also that the defendant received negative feedback about the plaintiff from its client, Wachovia.[8]  Defendant's memorandum, at 10.  This is a legitimate business decision, which this court should not second-guess.  *See Alexander v. Fulton Co.*, 207 F.3d 1303, 1340 (11th Cir.2000) (stating it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not improperly motivated).

The defendant's burden at this point is merely one of production, it does not have to show that the reasons set forth actually motivated the employment decision. *Chapman,* 229 F.3d at 1024, quoting *Combs*, 106 F.3d at 1528.   Because the

---

[8]Plaintiff is simply mistaken in his assertion that the defendant did not rely on the negative feedback from Wachovia as a reason to not hire plaintiff.  *See* plaintiff's response at 10 n. 5.

defendant had legitimate, nondiscriminatory reasons for its actions, the presumption of discrimination is eliminated and the plaintiff has "the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528; citing *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094-1095 & n. 10.  The plaintiff must proffer sufficient evidence to create a genuine issue of material fact regarding whether the defendant's articulated reasons is pretextual, otherwise the defendant is entitled to summary judgment.  *Combs*, 106 F.3d at 1530. *See also Harris,* 99 F.3d at 1083.

The only evidence presented by the plaintiff in response to the defendant's stated nondiscriminatory reasons for not selecting the plaintiff is that during Lucas' interview, Lucas stated that "Edwin is a pleasure to work with.  Brad is opposite (lowest skills - attitude)."[9]  Exhibit 9 to Robbins affidavit.  The plaintiff also relies on what Byrd was told by some unnamed representative of defendant.  Plaintiff response at 11.  Unfortunately, plaintiff Cook is not entitled to rely on what Byrd was

---

[9]The plaintiff repeatedly cites this exhibit as being to Burnell's affidavit.  It is not. The plaintiff further asserts that Andrews was interviewed at the same time as the plaintiff and was hired for the position of Operating Engineer.  The plaintiff states this negates the assertion by Burnell that the only position available for Byrd was Maintenance Technician.  Plaintiff's response at 7 n. 2.  The court notes only that positions available to Byrd are not relevant to this litigation.

told by someone he cannot name.  Nor can plaintiff rely on the fact that Byrd was asked his age.  Byrd is not a party to this lawsuit.  Similarly, what Byrd was told by David Reevers as to why Byrd was not hired is simply irrelevant to whether Cook was not hired because of his age.

Ultimately, the court is left with no more than the plaintiff's assertion that he was as qualified as the other applicants who were hired.  This is insufficient for the plaintiff to meet his burden of showing pretext.  *Lee v. GTE Florida*, 226 F.3d 1249, 1254 (11th Cir.2000).  The plaintiff fails to refute the defendant's assertion that two individuals told Douglas that they could not recommend the plaintiff and further, that one of them referred to the plaintiff as "lazy and incompetent."  The fact that the plaintiff believed he had a similar skill set to other employees who were re-hired is not sufficient for the plaintiff to show pretext.

The plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer.  *Lee*, 226 F.3d at 1253.  This court finds that any reasonable jury could believe that the defendant's stated reasons were sufficient to decide not to extend an offer of employment to the plaintiff.

This court can find no evidence in support of plaintiff's allegations of discrimination.  The fact that plaintiff believed he was as qualified as others selected

14

for the relevant positions does not make the defendant's selection of a different candidate discriminatory. As such, this court finds that summary judgment is due to be granted in favor of the defendant and against the plaintiff on his sole claim under the ADEA, and the court shall so order.

### V.  Conclusion

This court having considered all of the evidence, memoranda and briefs and the court finding that the defendant's motion for summary judgment (doc. 21) is due to be granted on the plaintiff's complaint;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on the plaintiff's complaint and judgment shall be entered in favor of the defendant and against the plaintiff by separate order.

**DONE** and **ORDERED** this the 17th day of February, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE